UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL PHIFER, et al.,

       Plaintiffs,                        Hon. Janet T. Neff

v.                                          Case No. 1:09-cv-00927

MICHIGAN SPORTING GOODS
DISTRIBUTORS, INC.,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

I.     INTRODUCTION

On October 13, 2009, this matter was referred to the undersigned for handling of all matters under § 636(a) and § 636(b)(1)(A) and for submission of recommendations on dispositive motions under § 636(b)(1)(B).

This matter is now before the Court on Defendant's Motion to Dismiss and/or for Summary Judgment (Dkt. 16), which pro se Plaintiff Cheryl Phifer has opposed. The other two Plaintiffs, Willie Robinson and already dismissed Terence Banks, each appearing pro se, neither filed nor stated in court any opposition to Defendant's motion.

The original hearing on the motion was held on April 15, 2010. Terence Banks did not appear, and a show cause order was issued to him. On April 15, 2010, Plaintiff Cheryl Phifer also filed a motion to amend her complaint. On April 29, 2010, Plaintiff Cheryl Phifer filed an amended motion and brief in support for leave to supplement and amend her complaint. The parties were scheduled to be heard

again on May 26, 2010, on Defendant's motion to dismiss and/or for summary judgment (Dkt. 16); Plaintiff's motion to amend complaint (Dkt. 27); Plaintiff's amended motion and brief in support (Dkt. Nos. 31, 32, and 33); and the order for Terence Banks to appear and show cause why his complaint should not be dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) and W.D.Mich. L.Civ.R. 41.1.

Of the named Plaintiffs, only Cheryl Phifer appeared at the May 26, 2010 hearing. Plaintiff Banks having failed to appear and show good cause, the undersigned issued a Report and Recommendation regarding his failure to prosecute (Dkt. 37). Upon approval of the Report and Recommendation (Dkt. 42), Plaintiff Banks' claims were dismissed. Given Plaintiff Robinson's failure to appear at the May 26, 2010 hearing, or to file any written response to the motion, an order to show cause was issued to him. In the Report and Recommendation entered now, the undersigned recommends that Plaintiff Robinson's claims also be dismissed for failure to prosecute.

Plaintiffs Phifer and Robinson were employed by Defendant Michigan Sporting Goods Distributors, Inc. doing business as MC Sports (hereinafter "MC Sports"). Plaintiff Willie Robinson alleges that he was treated less favorably than other employees and eventually discharged because of his race and in retaliation for his speaking up about racial harassment and discrimination. Both Willie Robinson and Cheryl Phifer claim that they were subjected to a hostile work environment and intentionally discriminated against because of their race. Both Robinson and Phifer claim that they were retaliated against unlawfully because of their opposition to discriminatory sexual and racial practices. Plaintiff Phifer also claims that she was retaliated against because of worker's compensation issues and was constructively discharged.

II.   FACTS[1]

Cheryl Phifer worked for MC Sports from September 20, 2004, until July 10, 2008, at which time she left work and did not come back.[2]  (Rush Declaration (Dkt. 18) at p. 4). Phifer had signed an "Associate Manual Acknowledgement Form" on September 20, 2004, and again on February 9, 2005. Both forms expressly state, "I agree to abide by all the policies and covenants in the [MC Sports Associate] Manual, as amended, including without limitation the policies on. . . arbitration." (Rush Declaration (Dkt. 18) at p. 4 and Exhibit E to Defendant's brief (Dkt. 17)).

Ms. Phifer filed a harassment and discrimination complaint with the MC Sports Human Resources Department on March 5, 2008. (Rush Declaration (Dkt. 18) at p. 4). For purposes of investigating the complaint, the company conducted a series of employee interviews. (*Id.*). The company also assigned its Director of Loss Prevention, who was African-American, to assist in the investigation. (*Id.*) Upon completion of the investigation, the Human Resources Department issued its decision on April 30, 2008, finding that for the most part Plaintiff's complaint lacked merit. (*Id.* and Exhibit F to Defendant's brief (Dkt. 17)). Plaintiff Phifer never appealed from that decision pursuant to MC Sports policies regarding the resolution of employee complaints. Instead she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 24, 2008. (Rush Declaration (Dkt. 18) at p. 4 and Exhibit G. to Defendant's brief (Dkt. 17)). She alleged the same claims as asserted to the Human Resources Department, plus two new claims relating to the creation of a new job description on June 25, 2008, and an alleged discharge on July 9, 2008. (Rush Declaration (Dkt. 18) at p. 4 and

---

[1] The facts with respect to Plaintiff Robinson really are not relevant to the Report and Recommendation as to him except for those related to his failure to prosecute, which are set forth in the final paragraph of this section.

[2] Plaintiff Phifer has alleged that she was constructively discharged based on her various claims of discrimination, including sexual harassment and worker's compensation retaliation.

Exhibit G to Defendant's brief (Dkt. 17)). On July 9, 2009, the EEOC issued a dismissal and notice of right to sue. (Exhibit H to Defendant's brief (Dkt. 17)).

Defendant's motion to dismiss or for summary judgment does not go to the merits of Plaintiffs' complaint. Rather, Defendant states that the claims were subject to mandatory arbitration and are now time-barred. Defendant relies on Plaintiffs Phifer's and Robinson's agreement to be bound by Defendant's Complaint Resolution Procedure ("CRP"), set forth in the MC Sports Associate Manual. The CRP culminates in binding arbitration according to the rules of the American Arbitration Association ("AAA"). Both Plaintiff Phifer and Plaintiff Robinson, in connection with their respective applications for employment, signed an acknowledgment that they had been given a copy of the MC Sports Associate Manual and agreed to its terms. (Exhibits E and I to Defendant's Brief (Dkt. 17)). According to Defendant, while both Plaintiffs initiated the CRP, with respect to at least some of the claims in this lawsuit, neither proceeded to the final step of arbitration pursuant to the rules of the AAA. The arbitration procedure applies to "any claim arising to or relating to. . . employment or termination of employment [with MC Sports]," and is the exclusive remedy for resolving any such claim. (Rush Declaration (Dkt. 18) at p. 3, and Exhibit B (Dkt. 17) at pp. 5-13 to 5-14).

According to Defendant, if an employee believes that he or she has been subjected to unlawful harassment or discrimination, the employee is required to file a complaint with the Senior Human Resource Official (Rush Declaration at p. 3 and Exhibit C (Dkt. 17)). If the employee is not satisfied with the decision of the Human Resources Department, the next step is to file a complaint pursuant to the CRP. (Rush Declaration at p. 3 and Exhibit B (Dkt. 17)). The complaint then proceeds like any other complaint except that it goes immediately to the company president, and then upon request by the employee, to arbitration. (Rush Declaration at p. 3 and Exhibit B (Dkt. 17)).

According to Defendant, due to changes in the law, the company has from time to time changed the time limits for initiating the Complaint Resolution Procedure. During the time relevant to this lawsuit, the time limit was "six months after the event(s) giving rise to the complaint." (Rush Declaration, at p. 3 and Exhibit B at p. 5-12). After the final decision by the Company President, the employee has an additional 28 days to request arbitration. (Rush Declaration at p. 3 and Exhibit B at p. 5-13). Thus, if Plaintiffs' complaints are subject to arbitration, the time for requesting such has long since passed.

Plaintiff Phifer does not dispute the accuracy of the facts stated by Defendant but disputes the propriety of arbitration under the circumstances. Plaintiff Phifer's position is that the matter should not be subject to arbitration. She relies on fraud, unconscionability, and a number of other arguments which will be discussed below.

As noted, Plaintiff Robinson has made no response to Defendant's motion. Plaintiff Robinson did not appear at the May 26, 2010 hearing and an order to show cause was issued to him (Dkt. 36). Plaintiff Robinson responded by the deadline, June 7, 2010, and stated that he forgot the hearing because he was engaged in an intensive job search (Dkt. 38).

For the following reasons the undersigned recommends that Defendant's motion be granted and that it be granted summary judgment as to both Plaintiffs Phifer and Robinson.

III.  CURRENT APPLICABLE LAW

Because materials outside the Complaint, such as affidavits and exhibits, have been submitted and considered, Defendants' motion is properly considered as one for summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion must "do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005), a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

As previously noted, Defendant's motion does not address the merits of Plaintiffs' Complaint. Rather, Defendant alleges that Plaintiffs' claims are subject to mandatory arbitration and the time period for conducting such arbitration has long since passed.

IV. ANALYSIS[3]

Plaintiff Phifer really does not dispute any of the facts relied on by Defendant, except she claims she was constructively discharged. In voluminous pleadings, she has also taken issue with the validity of the arbitration agreement, and more broadly, arbitration in general. Under the Federal Arbitration Act ("FAA"), a district court is required to "stay the trial" with respect to any "issue" that is referable to arbitration under the agreement between the parties. 9 U.S.C. § 3. The court also has the discretion to dismiss the case where all of the issues are subject to arbitration. *See, Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999).

In opposition to Defendant's motion, Plaintiff has asserted a variety of arguments, including: 1) the arbitration agreement was induced by fraud; and 2) the arbitration agreement is unconscionable. Plaintiff has also asserted that the claims asserted in the case are similar to the claims asserted in *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009), and therefore outside the scope of the arbitration agreement; that the Jamie Leigh Jones Amendment is applicable; that the Fairness in Arbitration Act of 2009 prohibits granting Defendant the relief it seeks; that the AAA has ordered a moratorium on arbitration; and that *Rent-A-Center West, Inc. v. Jackson*, a then pending Supreme Court case, is applicable and would be decided in her favor. For the following reasons, none of these arguments have merit.

---

[3] Excepting the paragraph which specifically discusses Plaintiff Robinson, this analysis relates solely to Plaintiff Phifer's arguments as she is the only Plaintiff who has raised them.

A. Fraud in the Inducement

Fraud in the inducement would require the Plaintiff to prove that: 1) the defendant made a material misrepresentation; 2) the representation was false; 3) when the defendant made the representation defendant knew that it was false or made it recklessly without knowledge as of its truth and as a positive assertion; 4) the defendant made the representation with the intent that it would be relied upon by plaintiff; 5) the plaintiff acted in reliance upon it; and 6) the plaintiff suffered damages. *See, e.g., Rex v. CSA-Credit Solutions of America, Inc.,* 507 F. Supp. 2d 788, 793 (W.D. Mich. 2007). Here, Plaintiff has not asserted any facts that would support a claim for fraud in the inducement. Instead, she simply complains that M.C. Sports requires arbitration of employment disputes as a condition of employment. This is not sufficient. Plaintiff's defense is, in reality, a claim of unconscionability.

B. Unconscionability

An arbitration agreement is a form of contract. Thus, whether it is unconscionable is a matter of state law. *Stutler v. T.K. Constructors, Inc.,* 448 F.3d 343, 345 (6th Cir. 2006). In determining whether a provision is an unenforceable contract of adhesion, and therefore unconscionable, Michigan applies a two-prong test: 1) What is the relative bargaining power of the parties, their relative economic strengths, the alternative sources of supply, in a word, what are their options?; and 2) Is the challenged term substantively reasonable? *Rehmann, Robson & Co. v. McMahan*, 187 Mich. App. 36, 43 (1991). The party seeking to invalidate a provision must show both types of unconscionability. *Allen v. Michigan Bell Telephone Co.*, 18 Mich. App. 632, 637 (1969).

Although reasonable minds might differ on this point, it is clear that under Michigan law, a contract is not invalid as an adhesion contract where the challenged provision is reasonable "even if the employee did not have a meaningful choice in signing it." *Rembert v. Ryan's Family Steak Houses, Inc.*,

235 Mich. App. 118, 157, n.28 (1999). The rationale is that if the prospective employee would be able to obtain work elsewhere the contract is not one of adhesion because the applicant has a meaningful choice in accepting or not accepting the offer of employment.

Courts in Michigan will require that the agreement must not waive statutory rights and must be procedurally fair. *Rembert*, 235 Mich. App. at 157-165. In *Rembert*, the Court abrogated *Rushton v. Meijer, Inc.*, 225 Mich. App. 156, 570 N.W.2d 271 (1997), and had this to say about predispute agreements to arbitrate in the employment context:

> . . .we do hold, as a matter of law, that an arbitration agreement that does not diminish the rights and remedies guaranteed by the relevant employment discrimination statute and that is fair procedurally is not an unenforceable contract of adhesion. . .Thereafter, we examine the necessary conditions for enforcement of these agreements: (1) a valid arbitration contract, (2) the absence of statutory prohibition against arbitrating particular statutory claims, and (3) the requirements of procedural fairness.

*Rembert*, 235 Mich. App. at 125.

In this case, the arbitration agreement involves no waiver of any statutory rights nor any remedies. It incorporates the rules of the AAA, which include the right to be represented by counsel, the right to engage in discovery, the right to a full evidentiary hearing, and the right to a decision by a neutral decision maker. Plaintiff Pfifer simply disagrees with the resolution of competing policy considerations reached by the Michigan Court of Appeals. The *Rembert* decision discussed the public-policy interests implicated by the arbitration of statutory employment-discrimination claims as follows:

> Opponents of arbitration in this case, as elsewhere, generally acknowledge the public policy favoring arbitration, but claim that it ought not apply to claims arising under public interest statutes such as civil rights statutes. They argue that the public policy advanced by the statutes would be undermined if these disputes were addressed in the relatively private forum of arbitration. These very arguments were thoroughly considered and rejected by the United States Supreme Court in a trio of cases known as the *Mitsubishi* trilogy and, later, in the *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Although initially reluctant to endorse

> *predispute* arbitration agreements of statutory claims, federal law has long since strongly endorsed arbitration of statutory claims.
>
> *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), is representative of the initial skepticism toward arbitration. There, the United States Supreme Court held that *predispute* agreements to arbitrate claims arising under the Securities Act of 1933 were void under § 14 of the Securities Act, which nullified stipulations to waive compliance with the Securities Act. Like the opponents of arbitration here, the Court in *Wilko* equated a waiver of judicial forum with a waiver of compliance with the substantive provision of the statute.
>
> *Wilko* has since been overruled, and its entire rationale has been thoroughly discredited and unequivocally rendered obsolete by the *Mitsubishi* trilogy. In this trilogy, the Supreme Court repudiated its former characterization of arbitration as a second-rate forum in which statutory rights are necessarily diminished. Instead, the Court recognized arbitration as an efficacious means for parties to enforce their statutory rights and held that parties who had agreed to arbitrate would be bound by those agreements.

*Rembert*, 235 Mich. App. at 135 (emphases added)(internal citations and footnotes omitted).

Plaintiff also disputes the validity of the cost sharing provision in the MC Sports arbitration scheme. Defendant's plan does not require the employee to pay any of the "arbitrator's compensation," but only requires the employee to share in the "costs" of the arbitration. (Defendant's brief, Dkt. 17, Exhibit B, at pp. 5-14.) Further, it invokes the rules of the AAA, which provide for "disputes arising out of employer promulgated plans," that the employer shall pay the arbitrator's compensation unless post-dispute and voluntarily the employee elects to pay a portion of the arbitrator's fees. (AAA Rules for Resolution of Employment Disputes, Rule 48) The filing fees required to be shared by the parties are lower than that for filing a federal lawsuit. Thus the cost sharing provision does not raise procedural unfairness.

Under Michigan Law, the arbitration provision is not unconscionable.

C. Plaintiff has made several other arguments in opposition to Defendant's motion

1. *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009) is inapposite

In *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009), the Fifth Circuit found that the parties' arbitration agreement did not apply with respect to tort claims brought by an employee allegedly gang raped while overseas in her employer-provided housing. The Court found that the sexual assault was independent of the employment relationship and the alleged assault occurred after hours when the plaintiff was off duty and in her bedroom. 583 F.3d at 236-237. In the present case, Plaintiffs have asserted no claims that are independent of their employment relationship with MC Sports. All of the allegations asserted relate to conduct that Plaintiff claims occurred at work during regular work hours and with respect to work related issues and situations. *Jones v. Halliburton Co.* is readily distinguishable.

2. Jamie Leigh Jones Amendment

Plaintiff asserts that the Jamie Leigh Jones Amendment requires denial of Defendant's motion. (Department of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 8116, 123 Stat. 3409, 3454-55 (2009), a/k/a Jamie Leigh Jones Amendment). That statute (not yet codified) applies to military contractors with contracts of at least $1 million. It imposes no substantive prohibitions on arbitration. It does preclude the government from doing business with such contractors if a condition of employment is mandatory arbitration of civil rights claims by employees. This case involves no government contract. It simply does not apply.

3. Arbitration Fairness Act of 2009

Plaintiff also alleges that the Arbitration Fairness Act of 2009 requires denial of Defendant's motion. The Arbitration Fairness Act of 2009 is proposed federal legislation. H.R. 1020 2009-2010.

It would limit the validity of arbitration agreements as to various employment and civil rights disputes. It has been referred to committee but is not current law.

    4.    American Arbitration Association

Plaintiff misapprehends a moratorium that has been placed on the AAA as to consumer debt arbitration, which has nothing to do with this case. On July 27, 2009 the American Arbitration Association announced a moratorium on new consumer debt collection cases. The AAA called for reform regarding perceived weaknesses with processes for this specific type of arbitration. One concern is that debtors/consumers are often non-participants in consumer debt arbitration. In contrast, here Plaintiff Pfifer initially participated in Defendant's Complaint Resolution Procedure but apparently abandoned it prior to arbitration.

Nor does the fact that certain members of Varnum, Riddering have either acted as arbitrators or hired arbitrators from the AAA without more demonstrate any "conflict of interest."

    5.    *Rent-A-Center West, Inc. v. Jackson*, 2010 W.L. 2471058 (June 21, 2010)

*Rent-A-Center West* does not even raise the same issues as presented by Defendant's motion, and in any event was recently decided in favor of arbitrability by the United States Supreme Court. Thus, it does not advance Plaintiff Phifer's arguments.

    D.    Plaintiff Robinson

The undersigned recommends that Plaintiff Robinson's claims be dismissed with prejudice. Under Fed. R. Civ. P. 41(b), the court has authority to dismiss a lawsuit, "if the plaintiff fails to prosecute or to comply with these rules or a court order." "Although Rule 41(b) anticipates a motion by the defendant. . . it places no limitation on the court's exercise of its inherent power to dismiss a case sua sponte. 8 MOORE'S FEDERAL PRACTICE, *Dismissal of Action*, § 41.50[6](b) at 41-194 (2009).

"Because dismissal with prejudice is an extreme sanction, it should be imposed only for willful disobedience of a court order." *Id.*, § 41.52[4] at 41-228. "However, a district court need only find that a party acted deliberately rather than accidentally, and need not find bad faith." *Id.*

In the present case, Plaintiff Robinson does not claim that he was in any way disabled or prevented from attending the court hearing; nor does he claim that he lacked notice of the court hearing. Instead, he states that he was busy looking for a job and simply forgot about the hearing. Such conduct constitutes deliberate disregard of the Court's order and does not provide a valid excuse for violating that order. Further, Plaintiff Robinson has made no opposition to Defendant's Motion to Dismiss and/or for Summary Judgment. Accordingly, his claims should be dismissed with prejudice.

V.     CONCLUSION

Plaintiff Phifer may be correct that there is a trend toward limiting mandatory arbitration of employee civil rights claims. She has made lengthy numerous, creative and vociferous arguments. However, she misapprehends the current state of the law. While Plaintiff Phifer may disagree vigorously with certain aspects of the current state of the law, it is what it is. As also discussed above, Plaintiff Robinson has failed to prosecute this matter and has made no response to the pending motion. Therefore, for all of the foregoing reasons, the undersigned recommends that Defendant's Motion to Dismiss and/or for Summary Judgment (Dkt. 16) be **granted**, and that Plaintiff Phifer's and Plaintiff Robinson's claims be dismissed with prejudice and without costs.

Respectfully submitted,

Date: July 28, 2010          /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).